THE STATE, SKILLMAN HARDWARE MANUFACTURING COMPANY, PROSECUTOR, v. GEORGE W. DAVIS ET AL., TRADING AS THE DAVIS LOCK AND HARDWARE WORKS, DEFENDANTS.

1. Under the terms of an agreement that B should furnish castings to A,. at a certain rate per ton, as they were ordered by A, and that A, on account of B's financial need, should furnish fourteen tons of pig iron to be used by B in the work, at a certain sum per ton to be allowed, a district judge found that the contract was to continue in force at least until the fourteen tons of pig iron were used, and held that B was entitled to pay for each order for castings as they were delivered. There was no error in holding that the contract, in respect of the time of payment, was divisible.

2. The judge found that on a certain day this contract was rescinded. There was evidence tending to show that A denied his liability to pay for any until all the castings were delivered; that thereupon B refused to make further deliveries; that then A replevied the unsued pig iron and took from B the patterns from which the castings were to be made. There was also evidence of conversations between the parties showing a desire in both to disrupt their business dealings under the contract. It was not erroneous to hold that upon the day when the pig iron was replevied the contract was rescinded.

On *certiorari.*

This writ brings up a judgment of the Mercer County Court of Common Pleas affirming a judgment taken to that court from the District Court of the city of Trenton.

The plaintiffs in the District Court claimed the sum of $97.40 for iron castings sold and delivered to defendant.

The state of the case settled by the District Court judge shows the following findings:

The evidence showed that the plaintiffs agreed to make castings for the defendant; that during the negotiations for the contract, which was a verbal one, the plaintiffs stated they had not on hand any money for the purchase of the pig iron necessary for the carrying on of the business of manufacturing castings in the quantities required by the defendant. The defendant thereupon agreed to purchase, and did purchase, a

car load of iron, containing fourteen tons, which, pursuant to agreement between the parties, was delivered by defendant upon the premises of the plaintiffs.

It was further agreed that defendant should be allowed $19.50 per ton for the iron by plaintiffs, without any particular time being specified when the castings or the iron were to be paid for.

The plaintiffs commenced to manufacture castings for defendant, and during the months of February, March, April and the early part of May, 1889, made successive deliveries thereof to the defendant.

It appeared that during the continuance of the contract the defendant would, at times, withdraw some of its patterns from plaintiffs to use in casting some brass elsewhere, but that the patterns were never all removed at once, nor for a very long time when removed.

The iron furnished was to be Briar Hill Iron No. 1. The defendant bought the iron for that brand, and it was shown to be of good quality.

During the continuance of the contract the plaintiffs did not furnish defendant with iron castings as fast as was required of them by their contract, and that the contract was that the plaintiffs should make and deliver castings to the defendant. (the defendant furnishing the pig iron and patterns necessary therefor) as fast as defendant should require them for its business, at four and a quarter cents per pound, for an indefinite period, but continuing at least until the fourteen tons of pig iron should be consumed, without any express agreement either as to the times of making payments for the castings or as to the manner of settling for the pig iron consumed in the manufacture.

That the contract was mutually rescinded on May 13th, 1889. The evidence on which the court found as a fact that the contract had been rescinded was as follows. The evidence is then set out at length. Its statement in detail is unnecessary. Its substance is, that the plaintiffs had made a demand upon the defendants for payment, and that the defendants

made a payment, but coupled with the payment an assertion that, by the terms of the agreement, they were not bound to pay anything until the whole amount of pig iron furnished was delivered in castings. The castings were delivered too slowly, and defendants refused to make payments upon delivery. Then a dispute arose between the parties, a desire for a rupture of their contractual relations was expressed, and, on May 13th, 1889, defendants replevied the unconsumed pig iron and demanded a return of their patterns.

This date is fixed by the District Court as the time when the contract was rescinded. At the trial, the defendants set up, by way of recoupment, certain damages which they alleged resulted to them subsequently to that date, by reason of the failure of the plaintiffs to execute their side of the agreement to its conclusion, as the contract provided.

This statement will suffice to indicate the pertinency of the legal questions decided.

Argued at June Term, 1890, before Justices REED and GARRISON.

For the prosecutor, *Edwin Robert Walker.*

For the defendants, *Isaac F. Richey.*

The opinion of the court was delivered by

REED, J. The first point pressed by the counsel for the prosecutor is, that the contract, as its terms were found by the trial court, is an entire contract; that the condition upon which the plaintiffs were to be paid for the castings was, that they should cast and deliver all of the fourteen tons of pig iron furnished; that this condition precedent being still unperformed, no right of action arose for a part payment.

The trial court found that the contract was to continue, at least, until the quantity of pig iron advanced should be consumed. This finding of fact is here conclusive.

The trial court then decided that the plaintiff·was entitled to payment upon the delivery of each parcel of castings ordered.

This is the first error assigned.

The question, whether a contract is entire, or divisible, in respect of the question of payment of the consideration, cannot be solved by the application of any fixed legal standard. It depends upon the intention of the parties, to be gathered from all the circumstances surrounding the agreement and from the face of the contract, if in writing.

It is quite as much, as a rule, a question of fact as of law, particularly where the terms of the agreement rest in parol.

I think that the facts found justified the trial judge in his conclusion, that this contract was, in respect of payment, apportionable. Nothing was said relative to the time or times of payment. The duration of the contract until all the pig iron should be used was inferential from the general features of the entire arrangement, and was not specifically mentioned in any of the conversations which constituted the agreement. That it could not have been the understanding of the parties that the plaintiffs should wait until all the pig iron had been worked into castings and delivered, appears from one fact which appears in the case.

It appears that in the negotiations the plaintiffs stated that they had not money for the purchase of pig iron, and defendants, for this reason, entered into the arrangement to furnish it. Now, it is in the highest degree improbable that the parties could have intended that the plaintiffs, who had not money or credit to buy pig iron for their work, should wait for their pay until all this work was executed. This improbability is increased when it is recalled that the castings were to be delivered as ordered by the defendants, and so it was in the power of the latter to postpone the final delivery indefinitely. So, although the agreement was to exist until the fourteen tons of pig iron were consumed, there is nothing in the terms of the contract which, by express stipulation or by necessary

intendment, precludes the plaintiff from a recovery upon the delivery of each order.

In the case of *Roberts* v. *Havelock*, 3 *Barn. & Ad.* 404, the plaintiff was employed and undertook to put a ship in thorough repair. Before this was completed a dispute arose between the parties. The plaintiff was called upon to put the vessel into a fit state to continue her voyage, but refused to do so until he was paid for the work already done. It was held that there was nothing in the contract which bound the plaintiff to do the whole repairs and make no demand till they were completed.

In the case of *Withers* v. *Reynolds*, 2 *Barn. & Ad.* 882, Reynolds agreed to supply Withers with wheat straw till June 24th, at a fixed sum per load, to be delivered at the rate of three loads a fortnight. Lord Tenderden said : " There is, I think, no doubt that by the terms of this agreement the plaintiff was to pay for the loads of straw as they were delivered. If that were not so, the defendant would have been liable to the inconvenience of giving credit for an indefinite length of time, and, in case of non-payment, bringing an action for a very large sum of money, which does not appear to have been intended by the contract."

Other samples of divisible contracts, similar in character to these, are given by Dr. Wharton in his book on *Contracts*, §§. 712, 899.

I conclude that there was no error in the judicial conclusion upon this point.

It is, secondly, insisted, that there was error in holding that there was a rescission of this contract, which shut the defendants off from setting up a claim by way of recoupment for damages resulting from a failure of the plaintiffs to perform after the 13th of May, 1889. I think the decision of the first question has an influential bearing upon the correctness of this conclusion of the trial court. For, having fixed upon the defendants the duty of making payments upon each delivery, I think there appears in the evidence a support for the conclusion that the defendants not only announced a different view

of their duty under the contract, but asserted their intention to stand upon their supposed right to withhold further payment until the work was finished. It is true that the plaintiffs had been slow in making deliveries of the castings ordered. They were received, however. But, induced by bad feeling resulting from this and other causes, the defendants gave the plaintiffs to understand that they would have to wait for their money until the end. There was evidence to support that view. This was equivalent to a refusal by the defendants to be further bound by the terms of the contract and conferred upon the plaintiffs the right to cease deliveries. *Withers* v. *Reynolds, supra; Blackburn* v. *Reilley,* 18 *Vroom* 290.

And these counter refusals were a ground from which the trial court could draw a conclusion that the contract was rescinded. Coleridge, J., in *Rex* v. *Whiston,* 4 *Ad. & E.* 599, 606; *notes to Cutter* v. *Powell,* 2 *Sm. Lead. Cas.* \*36; *Ad. Cont.* \*1219.

When this is considered in connection with the conversation between the parties touching the cessation of their business relations under this agreement, and with the recaption of the unused pig iron, and the removal of the patterns, there seems to be no absence of a ground to base a conclusion that the contract was rescinded.

When the correctness of this finding is admitted, then the action of the court in respect to the defence of recoupment is unassailable.

The only part of such defence in dispute is built upon the continued existence of the contract after the date of rescission.

The judgment of the Court of Common Pleas, affirming the judgment of the District Court, is affirmed.